PIERCE, Judge.
This is an appeal by E. S. Ballou, plaintiff below, from an adverse final decree entered by the Lake County Circuit Court in an action wherein plaintiff sought specific performance of an oral contract allegedly made with decedent John M. Campbell during the latter’s lifetime.
The amended complaint alleged that Campbell had, on or about July 1, 1951, orally agreed to bequeath his capital stock in Cross Country Truck Service, Inc., to plaintiff in return for plaintiff taking over management of the corporation and making it financially successful. It was alleged that plaintiff fulfilled his part of said agreement until the death of Campbell on March 18, 1964, after which he filed claim for the stock in Campbell’s estate proceedings, to which claim the Executors filed objections. To plaintiff’s amended complaint the Executor defendants filed motion to dismiss, which was granted by the Court. Upon appeal from that order this Court reversed, holding the amended complaint to state a cause of action. 179 So.2d 228.
The Executors then filed defenses denying the material allegations of the amended complaint. At the trial, plaintiff presented five witnesses besides himself and the Executors called seven witnesses, all in addition to the documentary evidence jointly offered. Plaintiff took deposition of his wife, Mrs. Corrine Ballou, which was suppressed by the Court because she was an “interested witness” and therefore could not depose on the subject matter of the suit, in the light of F.S. Section 90.05, F.S.A., known as the “Dead Man’s Statute”. Her sworn testimony at final hearing was also excluded for the same reason.
After final hearing, the Chancellor filed his Findings of Fact and Conclusions of Law, wherein he found inter alia that plaintiff had failed to establish the alleged oral agreement with decedent Campbell by “clear and convincing evidence” by “disinterested witnesses”, and also that whatever success the corporation had enjoyed was primarily due to the joint efforts of all the officers and employees of Cross Country. Final decree was thereafter entered in favor of the Executors, from which decree plaintiff has herewith appealed.
We have examined the entire record, including the exhibits, answers to interrogatories, and sworn testimony taken before the Chancellor; and also the detailed Findings of Fact made by the Chancellor and his subsequent final decree based upon such findings. The Findings of Fact are clearly stated and are amply supported by competent, substantial evidence, and we adopt such findings of the Chancellor as a part of this opinion (omitting only the technical allusions to portions of the Circuit Court record), as follows:

“Findings of Fact

1. This is a suit in equity in which plaintiff seeks relief by way of specific *528 performance of an alleged oral agreement between plaintiff and John M. Campbell, entered into on or about July 1, 1951. John M. Campbell died testate on March 18, 1964, whose estate is represented by the defendants. Early in this case a motion to dismiss the plaintiff’s amended complaint was granted by Honorable D. R. Smith, Circuit Judge, which on review by the District Court of Appeal of Florida, Second District, Ballou v. Campbell, Fla., 179 So.2d 228, it was held that the amended complaint stated a cause of action; thereafter plaintiff further amended his amended complaint in the third paragraph by adding the words ‘ * * * owned by Campbell at the time of his death.’
The amended complaint, as amended, alleged:
‘decedent orally agreed that in return for plaintiff agreeing to and taking over the management and operation of Cross Country Truck Service, Inc., and as specific consideration for making it financially successful, he, the decedent, John M. Campbell, promised to give his Capital stock in said Corporation to plaintiff E. S. Ballou, owned by Campbell at the time of his death.’
Plaintiff also alleged in his amended complaint, as amended, material to the issues in this cause: (1) that Cross-Country Truck Service, Inc., ‘as a direct result of the good management and personal efforts of plaintiff * * * began to improve its financial condition and in fact became a profitable enterprise’; (2) that with the knowledge and consent of the decedent, John M. Campbell, ‘plaintiff entered upon the execution of his agreement to manage and operate * * * made it financially successful, and made valuable contributions thereto and improvements therein; and did substantially increase the value of said corporation’; (3) That ‘from the date of said oral agreement, and at all times thereafter, plaintiff operated and managed said corporation until and after the death of John M.-Campbell * * * ’ (4) That defendants have not transferred to plaintiff the stock owned by deceased at the time of his death; (5) that plaintiff filed a Claim for said stock in the estate of said deceased, which was duly objected to by defendants; and (6) that plaintiff has performed all the terms and conditions on his part.
The defendants by their answer denied all the material allegations of the complaint, as amended, and put the plaintiff to proof thereon. The sole issue involved here is whether or not the plaintiff carried the burden to establish the oral agreement with deceased by clear and convincing evidence, and by disinterested witnesses whereby deceased was to leave plaintiff the stock owned by deceased at his death in said corporation.
2. There were six witnesses called by plaintiff, and seven by defendants, and documentary evidence.
3. That plaintiff was an employee of Cross-Country Truck Service, Inc., from April 15, 1950 until about September 4, 1964, during which period he was paid as salary and bonus and/or other compensation in the aggregate sum of $138,573.86, and such compensation was in keeping with compensation paid by others for the services performed by plaintiff.
4. That the alleged oral agreement between plaintiff and John M. Campbell, is alleged by plaintiff to have been on or about July 1, 1951, and under the terms of which plaintiff was to take over the management and operation of Cross-Country Truck Service, Inc., and, if as a direct result of the good management and personal efforts of plaintiff in making said corporation financially successful, Campbell would give plaintiff his stock in said corporation owned at the time of his death. The documentary proof placed in evidence as joint exhibits *529 of the parties, is uncontroverted and un-contradicted as to the following:
a. On June 30, 1951, the Board of Directors of Cross-Country Truck Service, Inc., elected the plaintiff to the office of Secretary-Treasurer, and would continue as Manager of the Leesburg territory, and would draw a salary as such, and would report directly to the President. At this directors meeting John M. Campbell was elected President.
b. On July 1, 1951, John M. Campbell, did not own any stock of Cross-Country Truck Service, Inc.
c. That plaintiff acted as Secretary-Treasurer, and Manager of the Leesburg territory from June 30, 1951, until November 5, 1956, when he was elected as Vice-President. Plaintiff served as Vice-President from November 5, 1956, until October 10, 1961, when he was elected Vice-President and Secretary, which offices he served until October 10, 1962. On October 10, 1962, plaintiff was elected Executive Vice-President, which office he occupied until January 6, 1964, when he was elected Executive Vice-President and Secretary, which office he occupied at the time of the death of John M. Campbell.
(d) That the first stock owned by John M. Campbell in said corporation was on July 12, 1951, on which date he acquired 70 shares, which specific shares were sold by him on April 4, 1957. Between the period of May 29, 1952 and the date of death of John M. Campbell, he had acquired and owned at his death 436 shares of the capital stock of said corporation.
(e) That the Board of Directors of said corporation had a meeting on November 5, 1956, and authorized Mr. Alt to discuss with key employees the purchase of stock of such corporation; that Mr. Alt discussed with the plaintiff his purchase of stock of said corporation, and the plaintiff advised Mr. Alt that he had no money to buy such stock, and in the discussion thereon, the plaintiff made no mention of any agreement he had with John M. Campbell in reference to stock owned by Campbell in said corporation.
(f) That shortly prior to April 3, 1959, John M. Campbell in a written memorandum, offered to permit the plaintiff and Frank Alt to purchase certain stock in Cross-Country Truck Service, Inc.; that this memorandum was discussed with the plaintiff by Mr. Alt, and the plaintiff advised Mr. Alt he was not interested in the purchase of stock of Cross-Country Truck Service, Inc., because he had no money to purchase such stock; that the stock offered by John M. Campbell to the plaintiff and Frank Alt was thereafter disposed of by the issuance to Frank Alt of 10 shares, and other parties 10 shares.
(g) That F. A. Alt, who was an employee of Cross-Country Truck Service, Inc., from August, 1950, until he retired on account of illness in March, 1963, was on November 5, 1956, elected Secretary-Treasurer of said corporation, and made Assistant to the President, to act in all matters pertaining to the business in the absence of the President. Mr. Alt continued as Secretary-Treasurer, and Assistant to the President until October 10, 1961, at which time he was elected Executive Vice-President and Treasurer. At a meeting of the Board of Directors held on October 10, 1961, it was provided that the person holding the office of Executive Vice-President was to advise the President on all important matters but to report directly to the Board of Directors, and with this office goes the authority and responsibility for the progress of the company. Mr. Alt occupied the position of Executive Vice-President until the Directors meeting held on October 10, 1962, when on account of his health, he was appointed Secretary and Treasurer, and E. S. Ballou was made Executive Vice-President. On November 21, 1955, in a letter from John M. Campbell, President, to E. S. Ballou, et al., Mr. Frank *530 Alt’s position as Assistant to the President was outlined, with advice that instructions of Mr. Alt were to be respected the same as if they were given by Mr. Campbell; and on the same date there was a certain memorandum from John M. Campbell to E. S. Ballou, advising him that no new personnel should be employed without the approval of Mr. Frank Alt.
5. The six witnesses of the plaintiff, consisted of the plaintiff and his wife, which were excluded as parties interested in the event under the Deadman’s Statute (§ 90.05, Florida Statutes [F.S.A.]). Corine Ballou, the wife of the plaintiff, testified she was interested in the event and would lose if the plaintiff lost the suit, and would gain if the plaintiff won his suit. There were seven witnesses who testified for the defendants, among which was a Secretary for the deceased for 27 years, and an auditor and accountant who was associated with deceased for many years, as well as employees closely associated with the deceased for many years, as well as the son-in-law of deceased, who had been associated with him for approximately 14 years, none of whom had ever heard of the alleged oral agreement between the plaintiff and John M. Campbell during his lifetime. Looking at the evidence of the plaintiff most favorable from the witnesses produced b^ him, such evidence does not even tend to establish anything more than an intention to leave the plaintiff some stock in Cross-Country Truck Service, Inc. The evidence of the plaintiff to support a position in his favor would require inference upon inference by the Court, and even then his proof is insufficient to meet the test imposed by law.
6. The burden of proof in this case was upon the plaintiff, and the plaintiff has failed to carry that burden by clear and convincing testimony and proof. In cases like this the Courts have been insistent upon the requirement for strong evidence and positive proof of such oral contracts. Then, too, the oral contract in this case must be established by disinterested witnesses, which the plaintiff has failed to do.
7.The Court further finds that the documentary proof filed in this case, . . . together with competent evidence admitted in this cause, conclusively shows that the plaintiff did not as a direct result of his good management and personal efforts, make said corporation financially successful, but that the success of said corporation was primarily due to joint efforts of other officers and employees of such corporation.

Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter.
2. That the equities in this cause are with the defendants and against the plaintiff.
3. That the plaintiff is not entitled to specific performance, as sought by his amended complaint, as amended.
4. The burden was on the plaintiff to establish the alleged oral agreement with proof that is clear and convincing by disinterested witnesses, and with evidence that tends to establish more than an intention on the part of Campbell to leave the plaintiff stock in Cross-Country Truck Service, Inc., owned at the time of his death, and plaintiff’s proof shows he failed in his attempt. 34 Fla., Jur.Wills, § 65; 57 Am.Jur.Wills, § 185; Traurig v. Spear, (1955 Fla.App.) 102 So.2d 165, and cases cited therein; Martel v. Carlson, Fla. [App.], 118 So.2d 592.
5. A decree based upon the foregoing findings and conclusions will be entered.”
The foregoing Findings and Conclusions were followed by entry of Final Decree in accordance therewith by the Chancellor, Honorable W. Troy Hall, Jr., denying the relief prayed for by plaintiff and dismissing the suit.
*531 The final decree, grounded as it is upon the Findings and Conclusions which we approve, must be and herewith is—
Affirmed.
ALLEN, Acting C. J., and HOBSON, J., concur.